## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALICE FRAGOLA,<br><br>                    *Plaintiff*,<br><br>          v.<br><br>THE KENIFIC GROUP, INC.,<br><br>                    *Defendant*. | Civil Action No. 21-1423 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Alice Fragola brings this action against her former employer, The Kenific Group, Inc., asserting claims for employment discrimination, hostile work environment, and retaliation under the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.*, as well as a D.C. common-law claim for negligent infliction of emotional distress.  Defendant removed the action to this Court, Dkt. 1, and now moves to dismiss the complaint as time barred and for failure to state a claim, Dkt. 3.  For the reasons stated below, the Court will **GRANT** in part and **DENY** in part Defendant's motion.

## I.  BACKGROUND

Because this case is before the Court on a motion to dismiss, the Court assumes the truth of the factual allegations in the complaint, from which the following background is drawn. *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

When Plaintiff Alice Fragola commenced this action in May 2021, she was 68 years old. Dkt. 1-1 at 2 (Compl. ¶ 1).  Defendant is a privately owned Virginia corporation that provides development, information technology engineering, and management consulting services to

various commercial and government clients, including, as relevant here, the United States Coast Guard. *Id.* (Compl. ¶ 2).

Plaintiff began working for Defendant in October 2019 as a Senior Consultant. *Id.* at 3 (Compl. ¶ 9). Defendant assigned her to support the Coast Guard's Boat Acquisition Program ("Boat Program") as part of a large government contract that employs multiple contracting companies, including Defendant. *Id.* Under this arrangement, the Coast Guard "assigned Plaintiff her functional work," but she was "supervised" by employees of Defendant. *Id.* (Compl. ¶ 10).

Plaintiff alleges that, "[t]hroughout the course of her employment with Defendant, . . . government employees, Defendant employees, and third-party contractor employees" subjected her to "discriminatory comments and treatment . . . on account of her gender and age." *Id.* (Compl. ¶ 11). In her complaint, she points to five such incidents. The first occurred in November 2019, shortly after she began her assignment to work with the Coast Guard. *Id.* (Compl. ¶ 12). Around that time, Plaintiff alleges that the Boat Program's assistant program director, Myung Park, a government employee, discouraged Plaintiff from attending meetings with a contract vendor because Plaintiff "would be the only woman there." *Id.* Plaintiff ultimately attended those meetings, but she says that, while there, she was "treated disparately from her male peers and discouraged from speaking." *Id.* at 3–4 (Compl. ¶ 12). After the meetings, Plaintiff asserts that she "complained to Defendant" that "she was not being taken seriously by the client." *Id.* at 4 (Compl. ¶ 12).

The second incident took place around January 2020, during a meeting between Plaintiff, Park, and Toby Burke, an employee of another contractor working on the Boat Program. *Id.* (Compl. ¶ 13). During that meeting, Plaintiff claims that she handed a presentation deck to Park

and that Park "threw the presentation at Plaintiff, striking her on the chest." *Id.* Plaintiff says that she reported this incident "to the government and to Defendant." *Id.*

The third incident also occurred "in and around January 2020." *Id.* (Compl. ¶ 14). When Plaintiff informed Defendant about the presentation incident, Defendant allegedly warned Plaintiff that the incident "could affect her continued employment with Defendant" and "advised her to speak to . . . Park" about it, which she did. *Id.* During that conversation, Park allegedly "commented that his mother was Plaintiff's age and . . . she was at home." *Id.* Plaintiff then shared this comment with one of her cubicle mates, Darren Liu, who was an employee of another contractor. According to Plaintiff, Liu responded by asking Plaintiff her age and then replied, "You're too old to be working, you should retire." *Id.* Plaintiff reported these comments to Defendant. *Id.*

The fourth incident Plaintiff identifies did not occur until some seven months later. *Id.* (Compl. ¶ 15). In August 2020, Plaintiff was tasked with onboarding one of Defendant's new hires, Teoman Kahraman, whom Plaintiff would be supervising. *Id.* During that onboarding process, Plaintiff apparently missed a required document, which prompted a government employee to tell Plaintiff, "Maybe you should retire [because] you can't remember anything." *Id.* As with prior incidents, Plaintiff reported this comment to Defendant. *Id.*

Finally, Plaintiff alleges that, after Kahraman joined Plaintiff's team, he "frequently berated [her] or otherwise exhibited hostility toward Plaintiff when Plaintiff tried to give him direction and/or feedback during one-on[]-one conference call meetings." *Id.* at 5 (Compl. ¶ 16). Plaintiff subsequently "complained to Defendant about Mr. Kahraman's ongoing hostility." *Id.*

In addition to these incidents, Plaintiff also alleges that Defendant provided Kahraman with compensation and perks that she herself did not receive, including "a relocation package, a

salary that was higher than hers, and a company-issued cell phone." *Id.* (Compl. ¶ 17).  When Plaintiff eventually learned this information, she complained to Defendant about this disparate treatment.  *Id.*

Defendant placed Plaintiff on administrative leave on October 30, 2020, and terminated her employment four days later, on November 3, 2020.  *Id.* (Compl. ¶¶ 18–19).  Plaintiff alleges that she was terminated "because she complained about the treatment she endured on account of her gender and age." *Id.* (Compl. ¶ 21).  She also alleges that, throughout her tenure with Defendant, she "was subjected to a hostile work environment on account of her gender and age." *Id.* (Compl. ¶ 20).

On May 3, 2021, Plaintiff commenced this action by filing a complaint in the Superior Court for the District of Columbia.  Because Plaintiff is a citizen of Florida, Defendant is a citizen of Virginia, and Plaintiff's claims seek more than $75,000 in damages, Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Dkt. 1 at 2, 4–5.  Shortly after removal, Defendant filed its motion to dismiss, Dkt. 3; *see also* Dkt. 4, which Plaintiff opposed, Dkt. 9.  The Court now turns to that motion.

## II.  LEGAL STANDARD

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating a Rule 12(b)(6) motion, the Court "accept[s] facts alleged in the complaint as true and draw[s] all reasonable inferences from those facts in the plaintiff['s] favor." *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015).  To survive a Rule 12(b)(6) motion, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . .

claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Well-pleaded complaints include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Raising the "sheer possibility that a defendant has acted unlawfully" is insufficient, *id.*; instead, the complaint's "[f]actual allegations," accepted as true, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, while "a well-pleaded complaint may proceed even if" it appears that "actual proof of those facts is improbable, and 'that recovery is very remote and unlikely,'" *id.* at 556 (citation omitted), the complaint must nevertheless "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" *id.* at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  ANALYSIS

**A.    Statute of Limitations**

Defendant first argues that Counts One and Two must be dismissed as time barred because, in Defendant's view, those claims are principally based on events that occurred in November 2019 and January 2020, and Plaintiff did not bring suit until May 2021—months after the one-year statute of limitations for those events had expired.[1] Dkt. 4 at 7–11; *see also* D.C.

---

[1] Defendant concedes that for the purposes of a hostile work environment claim, so long as one related incident occurs within the applicable limitations period, then incidents that occur outside the period may be considered for the purpose of determining whether a hostile work environment

Code § 2-1403.16(a) (statute of limitations).  Plaintiff has a response at hand.  As she points out, due to the judicial emergency created by the COVID-19 pandemic, the Superior Court for the District of Columbia "suspended, tolled, and extended," all D.C. Code statutes of limitations from March 18, 2020 through March 30, 2021, and therefore each of the events described in her complaint supports a timely claim under the DCHRA.  Dkt. 9 at 12; *see* Order, Superior Court of the District of Columbia (amended Jan. 13, 2021), at 3, https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-1-13-21_FINAL.PDF; *see also* D.C. Code § 11-947 (emergency authority to toll or delay proceedings).  In its reply brief, Defendant "acknowledges that the [Superior] Court tolled the statute of limitations in certain cases," but Defendant nevertheless preserves its statute of limitations challenge "to the extent that a claim is not tolled under the administrative orders." Dkt. 11 at 1 n.1.

"[A] statute of limitations is an affirmative defense," and, as such, it is typically resolved at summary judgment or trial.  *Stewart v. Int'l Union, Sec., Police & Fire Pros. of Am.*, 271 F. Supp. 3d 276, 280 (D.D.C. 2017).  The defense may "be raised in a pre-answer motion under Rule 12(b)," however, if "the facts that give rise to the defense are clear from the face of the complaint."  *Id.* (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir.

---

existed.  Dkt. 4 at 7; *see Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002). Defendant argues, however, that because the events that occurred outside the limitations period in this case were isolated in time and involved different individuals and different types of actions from the events inside the limitations period, the events outside the period "are not adequately linked or sufficiently related to those incidents occurring within the statutory period as to form one continuous hostile work environment."  *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011); *see also Morgan*, 536 U.S. at 120–21.  As a result, Defendant insists that Plaintiff cannot bootstrap the earlier events into a single, timely hostile work environment claim.  The Court need not address this argument, however, because Defendant has not demonstrated that its limitations defense will succeed in light of the Superior Court's tolling order.

1988)).  Here, the Superior Court's tolling order, of which the Court takes judicial notice, *see Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004), dooms Defendant's motion to dismiss Counts One and Two as time barred.  A straightforward application of the Superior Court's order to the earliest incident described in Plaintiff's complaint, which occurred in November 2019, illustrates why.  By the date of the Superior Court's first order, March 18, 2020, four-and-a-half months (at most) had accrued toward the limitations period for that incident.  On March 30, 2021, the applicable limitations period began to run again.  However, by the time Plaintiff filed her complaint in the D.C. Superior Court on May 3, 2021, only one additional month had been added toward the one-year limit, for a total of five-and-a-half months.  Consequently, Defendant has not demonstrated that Plaintiff's "potential rejoinder to the affirmative defense [is] foreclosed by the allegations in the complaint," and dismissal on this basis is therefore improper. *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013).

The Court will, accordingly, deny Defendant's motion to dismiss Counts One and Two as time barred.

**B.   Hostile Work Environment**

Defendant next argues that Counts One and Two must be dismissed for failure to state a claim because the complaint fails plausibly to allege gender- or age-based hostile work environment claims.  The Court agrees.

To establish a prima facie case for a hostile work environment claim under the DCHRA, a plaintiff must show:

> (1) that [s]he is a member of a protected class, (2) that [s]he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in the protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition, or privilege of employment.

*Campbell-Crane & Assocs., Inc. v. Stamenkovic*, 44 A.3d 924, 933 (D.C. 2012).[2]   In this case

there is also a "fifth element that must be proved." *Daka, Inc. v. Breiner*, 711 A.2d 86, 92 n.15

(D.C. 1998).   When an employee seeks to hold an employer liable under the DCHRA for a

hostile work environment created by her coworkers, the plaintiff "must also present sufficient

proof to hold the employer liable under the doctrine of *respondeat superior*." *Id.*   To defeat a

Rule 12(b)(6) motion, a plaintiff "need not plead a prima facie case of hostile work environment

in the complaint," but she must allege sufficient facts to "support such a claim." *Doe 1 v.*

*George Wash. Univ.*, 369 F. Supp. 3d 49, 69 (D.D.C. 2019) (quoting *McKeithan v. Boarman*,

803 F. Supp. 2d 63, 69 (D.D.C. 2011)).

 "A plaintiff asserting a claim based on a hostile work environment faces a high hurdle."

*Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016).   A workplace is considered "hostile"

only if it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).   The "conduct must be extreme"

and must be "both objectively and subjectively offensive, one that a reasonable person would

find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of*

*Boca Raton*, 524 U.S. 775, 787–88 (1998).   To assess whether a work environment violates the

DCHRA, the Court must look at the totality of the circumstances, including the "the frequency of

---

[2] Although Plaintiff brings her gender discrimination claims under the DCHRA and not Title
VII, the D.C. Court of Appeals "often look[s] to cases construing Title VII to aid [it] in
construing the D.C. Human Rights Act." *Daka, Inc. v. Breiner*, 711 A.2d 86, 92 & n.14 (D.C.
1998).   Hence, where appropriate, the Court "will rely upon decisions of the federal courts in
Title VII cases" as well as decisions of the D.C. and federal courts in DCHRA cases to resolve
Defendant's motion. *Doe 1 v. George Wash. Univ.*, 369 F. Supp. 3d 49, 69 n.11 (D.D.C. 2019).

the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23; *Doe 1*, 369 F. Supp. 3d at 69.

"The scope of [a plaintiff's] hostile work environment claim based on [a protected characteristic] . . . exclude[s] claims that bear no correlation to [the] plaintiff's [protected characteristic]." *Whorton v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 334, 350 (D.D.C. 2013). As a result, where allegations are "not in any way . . . tied to" a particular protected characteristic, the Court "will exclude the consideration of . . . such allegation from [Plaintiff's] hostile work environment claim based on [that characteristic]." *Doe 1*, 369 F. Supp. 3d at 71 n.13.

### 1. *Hostile Work Environment Based on Gender*

Count One asserts a hostile work environment claim based on gender. In her complaint, Plaintiff identifies three instances of hostile conduct that were allegedly based on gender. First, in November 2019, she says that a government supervisory employee, Myung Park, discouraged her from attending a series of meetings because she would be the only woman present, and then when she nevertheless attended those meetings, she says she was discouraged from speaking and was "treated disparately from her male peers." Dkt. 1-1 at 3–4 (Compl. ¶ 12). Second, Plaintiff alleges that Park, in a conversation in January 2020, commented to Plaintiff that "his mother was [her] age and . . . she was at home." *Id.* at 4 (Compl. ¶ 14). Finally, Plaintiff alleges that beginning in August 2020, Defendant provided her male subordinate, Kahraman, with

compensation and perks that she herself did not receive. *Id.* at 5 (Compl. ¶ 17).[3]  These

allegations fail to state a claim for a hostile work environment based on gender.

The two comments from Park, while offensive and undoubtedly disturbing to Plaintiff, do

not rise to the level of severity that the DCHRA contemplates.  The same goes for Plaintiff's

allegation that she was discouraged from speaking at meetings with a vendor.  Plaintiff's

assertion that she was "treated disparately from her male peers" at these meetings, moreover, is a

conclusory statement that does not satisfy the pleading requirements established in *Twombly*, 550

U.S. at 555, and *Iqbal*, 556 U.S. at 678.  To be sure, Plaintiff also avers that her male subordinate

received perks and benefits that she did not, but Plaintiff does not allege in her complaint that

this disparate treatment occurred because of Plaintiff's gender.  She argues to that effect in her

opposition brief, see Dkt. 9 at 24, but "[i]t is axiomatic . . . that a complaint may not be amended

by the briefs in opposition to a motion to dismiss."  *Konah v. District of Columbia*, 815 F. Supp.

2d 61, 71 (D.D.C. 2011) (quotation marks omitted).  In any event, all of these allegations—

whether considered separately or together—are neither sufficiently severe nor pervasive to

constitute "a change in the terms and conditions of employment."  *Farragher*, 524 U.S. at 788.

Rather, Plaintiff has only identified "a few isolated incidents" that occurred over the course of a

year, each one separated from the others by months, and controlling precedent establishes that

"[e]ven a few isolated incidents of offensive conduct do not amount to actionable harassment,"

*Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002); *see also Nichols v. Young*, 248 F. Supp.

3d 1, 9 (D.D.C. 2017).  Absent allegations of a pervasive pattern of abuse, Plaintiff's gender-

---

[3] Although Plaintiff attempts to connect two further events to her hostile work environment
claims—Kahraman's alleged hostility toward Plaintiff and the incident in which Park allegedly
threw a presentation at her—the complaint does not connect either of those events to Plaintiff's
age or gender.  *See Whorton*, 924 F. Supp. 2d at 350; *Doe 1*, 369 F. Supp. 3d at 71 n.13.

based hostile work environment claim fails as a matter of law.  *See Archagzai v. Broadcasting Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016).

In an attempt to avoid this conclusion, Plaintiff maintains that the complaint merely provides "a non-exhaustive list of examples," Dkt. 9 at 18, in support of her more general allegation that she "was subjected to discriminatory comments and treatment" by coworkers on account of her gender and age "[t]hroughout the course of her employment," Dkt. 1-1 at 3 (Compl. ¶ 11).  That argument is unavailing.  Although it is true that Plaintiff need not "specify in exhaustive detail each and every component act comprising the allegedly hostile or abusive work environment," she must nevertheless "set forth enough factual content to provide the defendant with fair notice of [her] claim and to render it plausible that [her] workplace was permeated with hostility or abuse that was sufficiently 'severe or pervasive' to alter the conditions of [her] employment."  *Graves v. District of Columbia*, 777 F. Supp. 2d 109, 121–22 (D.D.C. 2011).  As discussed, Plaintiff has failed to do so here, and the Court need not credit her conclusory statement that she was subjected to discriminatory treatment throughout her employment.  *Iqbal*, 556 U.S. at 678.

These flaws provide a sufficient basis to dismiss the complaint.  The Court observes, however, that it is also unclear that Plaintiff has adequately alleged that Defendant is liable for actions undertaken by government or third-party employees in this case, as opposed to actions by Defendant employees.  Plaintiff has alleged only one incident of gender-based treatment by Defendant or Defendant's employees—Defendant's provision of better compensation and benefits to Kahraman.  The remaining incidents were allegedly perpetrated by government employees or employees of other contractors.  Although it is possible for an employer to be held liable for a hostile work environment created by non-employees, that is true only where "a

plaintiff . . . show[s] that the employer knew or should have known of the existence of the hostile work environment and failed to take proper remedial action." *Simms v. Ctr. for Corr. Health & Pol'y Studs.*, 794 F. Supp. 2d 173, 191 (D.D.C. 2011).  In determining "whether an employer is liable for the hostile work environment created by a non-employee," moreover, "the Court must 'consider the extent of the employer's control over the alleged harasser and any other legal responsibility which the employer may have with respect to the conduct of the non-employees.'" *Whiting v. Labat-Anderson, Inc.*, 926 F. Supp. 2d 106, 117 (D.D.C. 2013) (quoting *Martin v. Howard Univ.*, No. 99-cv-1175, 1999 U.S. Dist. LEXIS 19516, at *7–8 (D.D.C. Dec. 15, 1999)). Here, however, the complaint fails to allege any facts concerning the extent of Defendant's control or responsibility for the conduct of non-Defendant-employee harassers in this case. Nevertheless, because Plaintiff's gender-based hostile work environment claim fails on other grounds, at least for now, the Court need not decide whether that omission independently warrants dismissal.

2.     *Hostile Work Environment Based on Age*

Plaintiff's age-based hostile work environment claim fails for many of the same reasons. The complaint alleges three incidents of hostile conduct based on age: Park's January 2020 remark that his mother was Plaintiff's age and she was at home, Dkt. 1-1 at 4 (Compl. ¶ 14); a comment that same month by Plaintiff's cubicle mate, who was not an employee of Defendant, telling Plaintiff, "You're too old to be working, you should retire," *id.*; and a statement eight months later by a government employee who told Plaintiff, "Maybe you should retire [because] you can't remember anything," *id.* (Compl. ¶ 15).  These allegations do not state an age-based hostile work environment claim.

Plaintiff alleges that she was at the receiving end of rude and offensive statements.  But, as explained above, more is required to state a hostile work environment claim.  "The bar for

demonstrating a hostile work environment [under Title VII and the ADEA] is a high one: '[A] plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Achagzai v. Broad. Bd. of Govs.*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. Here, even accepting Plaintiff's allegations as true, the alleged incidents are too few, too isolated, and insufficiently extreme—when considered as a whole—to support a hostile work environment claim. *See Stewart*, 275 F.3d at 1134. Although two of the alleged incidents occurred in quick succession in January 2020, the third did not occur until eight months later, and all three comments came from three different people. This does not amount to a pervasive pattern of abuse sufficient to alter the conditions of Plaintiff's employment.

Finally, as with Plaintiff's gender-based claim, the Court doubts that Plaintiff has pleaded sufficient facts to state a claim against Defendant for an age-based hostile work environment created entirely by individuals who were not employed by Defendant. *See Whiting*, 926 F. Supp. 2d at 117. But because resolution of this issue is unnecessary to the disposition of Defendant's motion, the Court once again leaves that question, if necessary, for another day.

## C.    Employment Discrimination

The Court is also unpersuaded that Plaintiff has adequately alleged claims for disparate treatment based on her age or gender. In Plaintiff's view, this question is not properly before the Court "[b]ecause Defendant has not moved to dismiss her discrete act gender and age discrimination claims, which are sufficiently pl[ed]." Dkt. 9 at 12. Defendant responds that it

did not separately move to dismiss any discrete disparate treatment claims because nothing in the complaint put it "on notice of such claims."  Dkt. 11 at 2.

The parties each have it somewhat right and somewhat wrong.  Plaintiff is correct that Counts One and Two are broadly denominated as claims for employment discrimination within the DCHRA: Count One refers to "discrimination on the basis of sex," Dkt. 1-1 at 5 (Compl. ¶ 23), and Count Two "discrimination on the basis of age," *id.* at 6 (Compl. ¶ 27).  As Defendant notes, however, both counts "incorporate the [preceding] paragraphs" of the complaint, *see id*. at 5, 6 (Compl. ¶¶ 22, 26), which allege that "Plaintiff was subjected to a hostile work environment on account of her gender and age," *id.* at 5 (Compl. ¶ 20); *see also id.* at 3 (Compl. ¶ 11), and overwhelmingly focus on purported acts of harassment (including acts committed by individuals who were not employed by Defendant).  Against this backdrop, it is not difficult to understand both how Defendant failed to grasp Plaintiff's intent to plead claims for discrete acts of gender and age discrimination and why Plaintiff maintains that she did, in fact, plead such claims.

The parties' divergent views, however, point to the proper disposition of Defendant's motion.  To start, although Defendant did not separately move to dismiss Plaintiff's claims for discrete acts of gender and age discrimination, it did move to dismiss Counts One and Two in their entirety for failure to state a claim. Dkt. 3.  Defendant's failure to seek dismissal of any claims premised on discrete acts of gender and age discrimination was not the product of gamesmanship or strategy; the Court has no reason to doubt Defendant's good-faith representation that it did not construe the complaint to allege any such claims.  And there lies the rub.  Although Defendant moves to dismiss pursuant to Rule 12(b)(6), that rule is the close cousin of Rule 8, which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (discussing Rules 8 and 12(b)(6) in conjunction with one another).  Rule 8 requires a

plaintiff to allege facts sufficient "to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests."  *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  It

does not take a great leap of logic to conclude that a plaintiff may not avoid dismissal under Rule

12(b)(6) by failing to provide the defendant with "fair notice of what the . . . the claim is," and

then arguing that the defendant failed to move to dismiss the veiled claim for relief.

This is such a case.  To state a claim for employment discrimination under the DCHRA, a

plaintiff must allege that

> (1) she is a member of a protected class, (2) she suffered an adverse employment
> action, and (3) the unfavorable action gives rise to an inference of
> discrimination, that is, an unfair inference that her employer took the action
> because of her membership in a protected class.

*Doe 1*, 369 F. Supp. 3d at 84.  Here, Plaintiff alleges that she is a member of two protected

classes (one based on her gender and the other based on her age), Dkt. 1-1 at 1 (Compl. ¶ 1), and

that Defendant "placed [her] on administrative leave" on October 30, 2020, and "terminated" her

on November 3, 2020, *id.* at 5 (Compl. ¶¶ 18–19).  At a minimum, a termination qualifies as an

adverse employment action within the meaning of the DCHRA.  *See Harris v. Wackenhut Servs.,*

*Inc.*, 590 F. Supp. 2d 54, 70 (D.D.C. 2008).  So far, so good.

The problem is that the complaint fails to allege *any* facts even arguably connecting

either her placement on administrative leave or her termination to her gender or age.  As

discussed above, the complaint describes three incidents of alleged harassment based on gender,

and three incidents of alleged harassment based on age.  But Plaintiff does not allege that any of

these incidents themselves constituted an adverse employment action, nor does she connect them

in any way to her placement on administrative leave or her termination so as to "give[] rise to an

inference . . . that her employer took the action because of her membership in a protected class,"

*Doe 1*, 369 F. Supp. 3d at 84.  Rather, Plaintiff alleges that she was "terminated . . . because she *complained* about the treatment she endured on account of her gender and age," Dkt. 1-1 at 5 (Compl. ¶ 21) (emphasis added), which is addressed in a separate count of the complaint and is different from alleging that Defendant terminated her because of her *age or gender*.  The absence of any factual allegations even purporting to tie Plaintiff's placement on administrative leave or her termination to her gender or age explains why Defendant failed to move to dismiss any such claim under Rule 12(b)(6)—Defendant was not on notice of such a claim because the complaint is so utterly deficient.  That deficiency cannot avert dismissal, and, if Plaintiff wishes to pursue one or more disparate treatment claims, she will need to allege facts sufficient to give Defendant fair notice and to identify the factual grounds upon which such a claim rests.

Because neither Count One nor Count Two states a claim for hostile work environment or employment discrimination under the DCHRA, the Court will grant Defendant's motion to dismiss with respect to both counts.

### D.    Retaliation

Plaintiff's retaliation claim is a different matter.  To establish a prima facie case of retaliation under the DCHRA, a plaintiff must show that

> (1) [s]he was engaged in a protected activity or that [s]he opposed practices made unlawful by the DCHRA, (2) the employer took an adverse action against [her], and (3) a causal connection existed between [her] opposition or protected activity and the adverse action taken against [her].

*Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012).  In the absence of direct evidence, a plaintiff may establish causation by showing "that the employer had knowledge of the employee's protected activity and that the [retaliatory] personnel action took place shortly after that activity."  *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  "Temporal proximity" between a protected

activity and a retaliatory action, standing alone, can "sometimes raise an inference of causation,"
*Doe 1*, 369 F. Supp. 3d at 73; however, both the Supreme Court and the D.C. Circuit have
cautioned that such proximity must be "very close," *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S.
268, 273 (2001); *accord Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  In
*Hamilton*, the D.C. Circuit noted that "the Supreme Court has cited circuit decisions suggesting
that in some instances a three-month period between the protected activity and the adverse
employment action may, standing alone, be too lengthy to raise an inference of causation," but it
added that "neither the Supreme Court not this court has established a bright-line three-month
rule."  666 F.3d at 1357–58 (citing *Clark Cnty. Sch. Dist.*, 532 U.S. at 273–74).

        At the motion to dismiss stage, "a plaintiff alleging retaliation faces a relatively low
hurdle."  *Jones v. Bernanke*, 685 F. Supp. 2d 31, 40 (D.D.C. 2010).   Plaintiff's complaint clears
that modest hurdle.  As discussed above, the complaint describes multiple incidents that
involved, in Plaintiff's words, coworkers subjecting her to gender- or age-based harassment or
discrimination.  *See* Dkt. 1-1 at 3–5 (Compl. ¶¶12, 14–15, 17).  After each of these incidents,
Plaintiff alleges, she "complained to Defendant," *id.* at 4–5 (Compl. ¶¶ 12, 17); *accord id.* at 4
(Compl. ¶¶ 14–15).  The most recent of the incidents Plaintiff identifies in her complaint
occurred sometime after August 2020, when Plaintiff complained to Defendant that she did not
receive similar compensation and perks as her male subordinate, Teoman Kahraman.  *Id.* at 5
(Compl. ¶ 17).  Defendant placed Plaintiff on administrative leave (at the latest) three months
after that complaint, and terminated her four days later.  *Id.* (Compl. ¶¶ 18–19).

        Defendant faults Plaintiff's allegations for lacking specificity and for failing to support an
inference of causation because each time Plaintiff alleges that she complained about an incident
to Defendant, she does not specify that "she complained about a violation of the DCHRA or

some other protected classification." Dkt. 11 at 5. That argument, however, is unavailing at the motion to dismiss stage where a plaintiff need only plead sufficient facts to raise her right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff has done enough here by alleging that she "repeatedly complained to Defendant *about* the hostile work environment she endured on account of her gender and age," Dkt. 1-1 at 3 (Compl. ¶ 11) (emphasis added), and then supporting that general statement by pointing to specific instances where she complained. At summary judgment, Plaintiff will be required to present detailed evidence regarding the nature and circumstances of her complaints—including what she complained about, when she complained, and to whom—but for purposes of the present motion Plaintiff has done enough to raise a plausible claim for retaliation.

Defendant next contends that Plaintiff has failed to allege a causal connection between her termination and her complaints about her subordinate and about non-Defendant employees. Dkt. 4 at 14. Specifically, it argues that the complaint is devoid of "any allegations to establish that the individuals who terminated Plaintiff would have retaliated against her for complaints made against non-[Defendant] employees or those not in a supervisory position." *Id.* That argument fails for two reasons. First, Plaintiff has alleged that, after one incident involving Myung Park, a government manager of the Boat Program, "Defendant advised Plaintiff to speak to Mr. Park regarding the [incident]," because, "according to Defendant, [it] could affect her continued employment with Defendant." Dkt. 1-1 at 4 (Compl. ¶ 14). Although Plaintiff has not expressly alleged that the incident in question, which involved Park allegedly striking Plaintiff with a presentation, was motivated by gender or age, Defendant's warning to Plaintiff that tensions with government employees could affect her employment *with Defendant* at least renders it *plausible* that her complaints about coworkers and employees who were not employed

by Defendant could have led to her termination. The second reason why Defendant's argument

fails is that it ignores Plaintiff's allegation that she complained to Defendant in August,

September, or October 2020 about her male subordinate receiving employment benefits that she

herself did not. *Id.* at 5 (Compl. ¶ 17). This is a complaint about the actions of Defendant, not

third parties. And, since the Court must accept as true Plaintiff's allegation that she complained

to Defendant "about the hostile work environment she endured on account of her gender and

age," *id.* at 3 (Compl. ¶ 11), it is plausible that Plaintiff's termination was motivated by

Defendant's umbrage at Plaintiff's series of allegations.

Finally, Defendant maintains that Plaintiff's claim should fail because she did not "plead

that her performance was satisfactory." Dkt. 11 at 5. That is an argument for summary

judgment, not a motion to dismiss. To state a claim for retaliation, Plaintiff need only plausibly

allege that she was engaged in protected activity and was terminated as a result. *See Jones*, 685

F. Supp. 2d at 40. Because Plaintiff's complaint meets this "relatively low hurdle," *id.*, Plaintiff

has stated a plausible retaliation claim.

Accordingly, the Court will deny Defendant's motion to dismiss with respect to Count

Three.

**E.     Negligent Infliction of Emotional Distress**

That leaves Plaintiff's common-law claim for negligent infliction of emotional distress

("NIED"). In most cases, a plaintiff must establish four elements to recover for NIED: (1) that

she was "in a zone of physical danger," (2) that the zone of danger was "created by the

defendant's negligence," (3) that the plaintiff "feared for her own safety," and (4) that "the

emotional distress so caused was serious and verifiable." *Cornish v. District of Columbia*, 67 F.

Supp. 3d 345, 363 (D.D.C. 2014). In certain "limited" cases, however, D.C. law recognizes a

second means of proving NIED.  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 792 (D.C.

2011).  Under this avenue of recovery, a plaintiff must show that

> (1) the defendant has a relationship with the plaintiff, or has undertaken an
> obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's
> emotional well-being, (2) there is an especially likely risk that the defendant's
> negligence would cause serious emotional distress to the plaintiff, and (3)
> negligent actions or omissions of the defendant in breach of that obligation have,
> in fact, caused serious emotional distress to the plaintiff.

*Id.* at 810–11.

In her opposition, Plaintiff maintains that both means of recovery are available here for

two reasons: (1) because she "alleges . . . severe emotional distress," and "this allegation, alone,

is sufficient to satisfy the elements of the physical injury theory of liability," Dkt. 9 at 24, and (2)

because "the parties in this case were in an employee-employer relationship" and "it is

foreseeable that the environment to which Ms. Fragola was subjected would cause her emotional

distress," *id.* at 25.

As an initial matter, the Court has its doubts that an employer-employee relationship may

form the foundation for a relationship-based NIED claim or that Plaintiff has pleaded sufficient

facts to support a claim that Defendant placed her in a "zone of physical danger" through any

negligent acts.  The Court need not decide either issue, however, because Plaintiff's claim fails

for a more fundamental reason.  No matter which theory of NIED applies, to survive a motion to

dismiss, Plaintiff must allege facts sufficient to permit a reasonable inference that she suffered

"serious emotional distress" due to Defendant's negligence.  *Hedgepeth*, 22 A.3d at 817.  On this

score, however, Plaintiff's complaint is woefully inadequate.  Count Four consists of only two

lines: Paragraph 34, which "incorporates the foregoing paragraphs" of the complaint, and

Paragraph 35, which alleges that "Defendant's actions negligently inflicted severe emotional

distress upon Plaintiff, for which she is entitled to compensatory damages."  Dkt. 1-1 at 6–7

(Compl. ¶¶ 34–35).  This allegation is nothing more than a "[t]hreadbare recital[] of the elements" of an NIED claim, "supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  Other than this statement, Plaintiff does not indicate anywhere else in the complaint that she experienced emotional distress due to Defendant's actions—to say nothing of emotional distress that could be characterized as "acute, enduring or life-altering," *Hedgepeth*, 22 A.3d at 817.  As a result, her NIED claim fails to satisfy the pleading requirements set forth in *Twombly*, 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678.

Accordingly, the Court will grant Defendant's motion to dismiss with respect to Count Four.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, Dkt. 3, is hereby **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** with respect to Counts One, Two, and Four and **DENIED** with respect to Count Three.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  June 3, 2022